IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kathy M. Southerland,           :

    Plaintiff,              :

  v.                           :       Case No. 2:08-cv-0440

Michael J. Astrue,              :       JUDGE FROST
Commissioner of Social Security,        MAGISTRATE JUDGE KEMP
                                :
    Defendant.

REPORT AND RECOMMENDATION

I.  Introduction

    Plaintiff, Kathy M. Southerland, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income.  The application, which was protectively filed on November 19, 2003, alleged that plaintiff became disabled on February 1, 2001, as a result of anxiety attacks, paranoia, and back pain.

    After initial administrative denials of her claim, plaintiff was afforded a hearing before an Administrative Law Judge on July 18, 2007.  In a decision dated August 9, 2007, the Administrative Law Judge denied benefits.  That decision became the final decision of the Commissioner when the Appeals Council denied review on March 15, 2008.

    Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on July 15, 2008.  Plaintiff filed a statement of errors on August 27, 2008, to which the Commissioner responded on October 27, 2008.  Plaintiff filed a reply brief on November 10, 2008, and the matter is now ripe for decision.

II.  Plaintiff's testimony

Plaintiff's testimony at the administrative hearing revealed the following. Plaintiff, who was 44 years old at the time of the administrative hearing, has an eighth grade education. (Tr. 343). She lives with her mother. (Tr. 352).

Plaintiff believes she is disabled due to anxiety and paranoia. (Tr. 345). She also claims she cannot work due to back pain, major headaches and because she hears voices. (Tr. 346, 348). Plaintiff testified the last time she was drunk was one week prior to the hearing. (Tr. 349). She testified that she drinks about 6 beers "a few times a month." (Tr. 350). Her mother has spoken to her about entering rehabilitation. *Id.* She drank a "beer or two" the day before the hearing. (Tr. 351).

On a typical day, plaintiff gets up between 8:00 a.m. and 9:00 a.m. She is able to perform household chores, including vacuuming, dusting, sweeping, cooking, laundry. She goes to the grocery store with her mother. (Tr. 352). She does drive, usually just to the grocery store. *Id.* Plaintiff and her mother take walks, usually around the block. (Tr. 353).

### III. The Medical Records

Pertinent medical records reveal the following. On March 5, 2001, Plaintiff presented to Columbus Neighborhood Health Center with complaints of panic spells and anxiety. She was prescribed Xanax and Trazodone. (Tr. 186-187).

Plaintiff was taken to Mount Carmel Hospital on September 28, 2001 stating that she did not want to live anymore. It was noted that plaintiff had a past history of depression and anxiety, but she had been feeling more depressed. Plaintiff stated she had 6 beers earlier in the evening. Her family believed she may have ingested brake fluid, but testing revealed that she had not. After being seen by a social worker, plaintiff was discharged. (Tr. 202-203).

On May 16, 2002, Plaintiff was seen by a consultative

examiner, Dr. Purdy.  Plaintiff complained of being paranoid, fatigued in the morning, listless, somewhat forgetful, and socially withdrawn.  The physical examination was normal.  Plaintiff had normal ranges of motion of the cervical and lumbar spine.  Dr. Purdy diagnosed a paranoid personality, perimenopausal syndrome and depression.  She recommended psychological counseling and possible evaluation in regards to plaintiff's work ability.  Dr. Purdy further noted that plaintiff should be rehabilitated in regards to her smoking habit and alcohol consumption.  (Tr. 204-12).

On May 30, 2002, Plaintiff was evaluated by Dr. Lewis, a psychologist.  Plaintiff complained of depression which had started a few months earlier, sleeping problems and anxiety.  On examination she smelled of alcohol, and admitted to drinking the night before.  Dr. Lewis noted her responses to simple judgment questions were stereotypical and inappropriately formed, suggesting that her judgment was not within normal limits.  Dr. Lewis diagnosed Plaintiff with alcohol intoxication, a mood disorder NOS (not otherwise specified) and an anxiety disorder NOS.  Plaintiff had a good ability to relate to others, a good ability to perform simple repetitive tasks, and a good ability to withstand the stress and pressures associated with day to day work activity, but she had problems with understanding and memory due to alcohol intoxication.  Her ability to sustain concentration and persistence were good, her ability to relate to other workers appeared to be good, and her ability to adapt appeared to be good.  Dr. Lewis also noted problems with traveling and using public transportation.  Plaintiff was assigned a GAF of 55. (Tr. 213-15).

On August 2, 2002, a reviewing psychiatrist, Dr. Richardson, reported that Plaintiff did not have a severe psychological impairment.  However, she suffered from coexisting non-mental

impairments that required referral to another medical specialty. (Tr. 217-223).

On April 15, 2004, Plaintiff saw Dr. Tanley for a consultative psychological evaluation. Plaintiff complained that her nerves were bad and that she had previously seen a psychologist for anxiety and depression. She said she drank three or four beers a day. Dr. Tanley described plaintiff's affect as miserable and he noted that she cried during the examination. Dr. Tanley diagnosed major depressive disorder, alcohol abuse, and borderline intelligence. He rated plaintiff's GAF at 50. Dr. Tanley noted her father died three weeks prior to the evaluation and she was in the process of a divorce. He opined that plaintiff's ability to relate to others was moderately impaired; her ability to understand and follow simple instructions was mildly impaired; her ability to maintain attention to perform simple, repetitive tasks was mildly impaired; and her ability to withstand the stress and pressure of daily work was severely impaired. (Tr. 224-26).

A state agency reviewing psychologist, Dr. Matyi, reported on May 3, 2004, that plaintiff's impairments were severe, but they were not expected to last 12 months. She opined that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. (Tr. 233-41).

Plaintiff underwent another psychological evaluation on

-4-

April 7, 2005. The evaluator, Dr. Bergsten, noted that plaintiff's chief complaints were anxiety and paranoia. Plaintiff reported that she drank about 12 beers a week. She denied getting drunk or symptoms of abuse or dependence. The Wechsler Adult Intelligence Scale (WAIS) III revealed a verbal IQ of 70, a performance IQ of 74 and a full-scale IQ of 69. Dr. Bergsten's diagnosis was anxiety disorder NOS, dysthymic disorder, rule out psychotic disorder, and rule out alcohol abuse. Dr. Bergsten assigned Plaintiff a GAF of 45. She opined that plaintiff was markedly limited in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to respond appropriately to changes in the work setting. Dr. Bergsten opined that plaintiff was unemployable from a psychological perspective, but that her mental functional impairments were expected to last 9 to 11 months with treatment intervention. (Tr. 297-315).

Office notes from plaintiff's treating physician, Dr. Davis, were submitted from November 2005 to June 2007. (Tr. 263-84, 316-24). They indicated that she had been treated for osteoarthritis, intervertebral disc degeneration, generalized anxiety disorder and headache syndromes.

On February 9, 2006, an MRI scan of plaintiff's cervical spine showed spinal stenosis, both congenital and acquired, and degenerative changes which were greatest at the C4-C5 and C6-C7 levels. (Tr. 242-43). An MRI scan of plaintiff's lumbar spine showed facet degenerative change at L5 and a broad-based pseudo disc bulge causing mild bilateral foraminal narrowing,

central disc protrusion at L4-L5 mildly narrowing at the AP diameter of the canal, and mild disc bulge and facet degenerative change at L3-L4 causing mild canal stenosis. (Tr. 244-25).

Plaintiff underwent a psychological evaluation on July 5, 2006 with Dr. Tilley. Plaintiff reported a history of major depression, panic attacks, and agoraphobia. At that time, she was taking Xanax. She denied any history of significant alcohol abuse. WAIS III testing demonstrated a verbal IQ of 71, a performance IQ of 74 and full-scale IQ of 70. Dr. Tilley diagnosed panic disorder with agoraphobia, major depressive disorder, recurrent, moderate, and borderline intellectual functioning. He assigned a GAF of 45. Dr. Tilley opined that plaintiff was unemployable from a psychological perspective, and that her mental functional impairments were expected to last 9 to 11 months with effective treatment. Dr. Tilley thought that plaintiff was markedly limited in her ability to work in coordination with or proximity to others without being distracted by them and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 248-62).

On January 19, 2007, Dr. Davis reported that plaintiff could lift and carry 10 pounds frequently and 5 pounds occasionally. Plaintiff had the ability to stand and walk for less than 30 minutes during an 8-hour workday and could sit for only two hours during an 8-hour workday. Plaintiff could sit for 30 minutes before needing to stand, stand for 10 minutes before needing to sit, and walk every 30 minutes for 5-10 minutes at a time. Dr. Davis believed that plaintiff could never twist, stoop, bend, crouch, or climb ladders and she would have difficulty balancing on a narrow or slippery surface. Dr. Davis supported his opinion with medical findings of limited range of

motion, tenderness to palpation, and spasms in the lumbar back. (Tr. 325-326).

Plaintiff saw Dr. Lewis for a second psychological evaluation on March 30, 2007. Plaintiff complained of memory problems, bad nerves and depression. She admitted that she had been drinking before the evaluation and said that she drank about seven beers every day. She said she never told her doctor how much she drank. The WAIS revealed that Plaintiff's IQ was 69. On the Wechsler Memory Scale, her working memory score fell in the borderline range, her immediate memory score fell in the borderline range, and her delayed memory score fell in the low average range. Plaintiff's scores on psychological testing were considered invalid due to intoxication and poor effort. After this evaluation, Dr. Lewis diagnosed alcohol intoxication, alcohol abuse, major depression, recurrent, moderate, post traumatic stress disorder, chronic, and borderline personality disorder with histrionic features. Dr. Lewis assigned plaintiff a current GAF score of 55, and her highest GAF over the past year was 60. Dr. Lewis concluded that plaintiff's ability to relate to others appeared to be within normal limits, that her ability to understand and follow instructions appeared to be fair, that her ability to perform simple repetitive tasks appeared to be good, and that her ability to withstand the stress and pressures associated with day to day work activity appeared to be mildly impaired by chronic intoxication. He thought that her capabilities in the areas of understanding and memory were in the low average range, that her ability to sustain concentration and persistence was mildly impaired, her ability to interact and relate to other workers appeared to be within normal limits, her ability to adapt appeared to be fair, and that she had problems with traveling and the ability to use public transportation. (Tr. 285-91).

On May 22, 2007, Dr. Lewis completed a Mental Ability to Do Work-Related Activities questionnaire and noted that Plaintiff had moderate restrictions in the ability to make judgments on simple work related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.  Dr. Lewis noted "MSE (mental status examination) and interview suggests chronic intoxication interferes [with] judgment and memory.  If not intoxicated, impairment would not exist. Unfortunately, she was intoxicated during the exam." (Tr. 292-94).

On June 19, 2007, Dr. Davis essentially repeated his earlier evaluation of plaintiff's physical capabilities.  He also noted that plaintiff could occasionally push/pull.  She needed to avoid all exposure to hazards and even moderate exposure to extreme temperatures.  Dr. Davis cited to the same findings in support of his opinion. (Tr. 325-26).

On July 11, 2007, plaintiff was evaluated at NetCare upon referral by her attorney.  Plaintiff complained of hearing voices and consuming alcohol to calm her nerves.  She reported getting lost when doing errands and that her mother has to accompany her.  Based on her complaints, she was tentatively diagnosed with schizoaffective disorder with depression and assigned a GAF of 51. (Tr. 327-333).

IV.  <u>The Expert Testimony</u>

A medical expert, Dr. Garling, testified at the administrative hearing that Plaintiff has no documented physical impairments. (Tr. 361-63).  A vocational expert, Dr. Oestreich, also testified at the administrative hearing.  He testified that plaintiff's past work as a cashier was light and unskilled.  The ALJ posed a hypothetical question to Dr. Oestreich describing someone of plaintiff's age, education, and past work experience, who had the residual functional capacity to lift 10 pounds

occasionally and 5 pounds frequently. That person could stand or walk for an hour at a time and for 4 to 8 hours in a work day. The hypothetical question also described a person who could perform only simple repetitive tasks requiring no significant changes in the work environment and who would be off task about five minutes out of every hour. (Tr. 365). The vocational expert testified that there were no jobs that existed in significant numbers in the national economy for a person with such limitations, primarily due to the inability to concentrate for five minutes out of every hour. (Tr. 366). If the five minute per hour limitation were eliminated, however, that person could do various unskilled sedentary jobs such as telephone information clerk, hand packer, or assembler. (Tr. 366-67).

## V. The Administrative Decision

Based on the above evidence, the Commissioner found that plaintiff suffered from severe impairments including degenerative disc disease of the lumbosacral and cervical spines; dysthymic disorder; anxiety disorder; and chronic alcohol abuse. As a result of these impairments, including her alcohol abuse, the Commissioner found that plaintiff could perform a range of sedentary work with the following mental limitations: simple repetitive tasks requiring no significant changes in the work environment and permitting her to be off task about five minutes out of every hour. With these limitations, plaintiff could not work. However, the Commissioner found that if plaintiff's alcohol abuse were not taken into account, plaintiff would have the same physical limitations, but her mental limitations would decrease in that she would be able to perform simple repetitive tasks without the need to be off task for five minutes per hour. Based on the vocational expert's testimony, the Commissioner found that plaintiff could perform various unskilled sedentary jobs and that she was not disabled once her alcohol abuse was

-9-

factored out of the equation.

## VI. Legal Analysis

In her statement of errors, plaintiff raises two issues. First, she argues that the Commissioner erred by failing to consider the effect of all of her mental impairments when assessing her RFC without alcohol use. Second, she argues that the Commissioner did not have an adequate basis for rejecting the opinion of her treating physician, Dr. Davis. These contentions are evaluated under the following standard.

<u>Standard of Review</u>. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (<u>quoting</u> <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id.* <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (<u>quoting</u> <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708

F.2d 1058, 1059 (6th Cir. 1983).

### A. Assessment of Plaintiff's Mental Impairment

It is clear from the above recitation of the numerous psychological evaluations that there was quite a discrepancy in the opinions of the various professionals who performed those evaluations. Plaintiff contends that the Commissioner erred by crediting the opinion of Dr. Lewis, and particularly his view of her abilities if she did not abuse alcohol, and by discounting the opinions of Drs. Bergsten and Tilley.

Ordinarily, the Commissioner is entitled to resolve conflicts in the medical evidence, and that resolution cannot be overturned by the Court if there is substantial support in the record for the Commissioner's choice. The Commissioner expressed a preference for Dr. Lewis' opinion because he was the only evaluator who had a complete picture of plaintiff's alcohol abuse. Plaintiff asserts, however, that other evaluators knew about her alcohol use as well, so that the Commissioner did not articulate a proper basis for discounting their opinions.

As the Commissioner notes, it does appear that plaintiff understated her alcohol use to many of the evaluating psychologists, including Drs. Bergsten and Tilley. Further, Dr. Lewis was the only psychologist who expressed an opinion on the key issue, which is how impaired plaintiff was from a mental standpoint if her alcohol abuse were disregarded. Under these circumstances, the Court cannot substitute its judgment for the Commissioner's concerning how best to resolve the substantial disagreement which existed among the various psychological opinions.

### B. The Rejection of Dr. Davis' Opinion

Plaintiff's second argument is that the Commissioner erred in failing to accord controlling weight to the opinion of Dr. Davis, or, alternatively, failed to articulate any rationale for

rejecting his opinion.  She also contends that it was error for the Commissioner to rely on Dr. Purdy's evaluation because it was made in 2002, long before Dr. Davis performed evaluations and ran tests showing that plaintiff had a severe physical impairment. For the following reasons, the Court concludes that the Commissioner did not err in discounting Dr. Davis' opinion and by finding that plaintiff could perform sedentary work.

A treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  A summary by an attending physician made over a period of time need not be accompanied by a description of the specific tests in order to be regarded as credible and substantial. Cornett v. Califano, [Jan. 1980 - Sept. 1980 Transfer Binder] Unempl. Ins. Rep. (CCH) ¶16,622 (S.D. Ohio Feb. 7, 1979).

A physician's statement that plaintiff is disabled is not determinative of the ultimate issue.  The weight given such a statement depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. §404.1527; Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985).  In evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990).  The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living.  Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994).

If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference.  Harris, 756 F.2d at 435.  The Commissioner may have expertise in some matters, but cannot supplant the medical expert.  Hall v. Celebrezze, 314 F.2d 686, 690 (6th Cir. 1963).  The "treating physician" rule does not apply to a one-time examining medical provider, and the same weight need not be given to such an opinion even if it favors the claimant.  Barker v. Shalala, 40 F.3d 789 (6th Cir. 1994) (per curiam).

As explained in Rogers v. Comm'r of Social Security, 486 F.3d 234, 242 (6th Cir. 2007), "[t]here is an additional procedural requirement associated with the treating physician rule."  Under this procedural requirement, the Commissioner must clearly articulate both the weight given to the treating physician's opinion and the reasons for giving it that weight.  Two reasons underlie this procedural requirement.  First, it assists the claimant to understand why the Commissioner has concluded, contrary to what the claimant has been told by his or her treating doctor, that the claimant is not disabled.  Second, it ensures that the Commissioner has correctly applied the substantive law applicable to opinions of treating sources and that an appellate court can review that application in a meaningful way.  Id.

Where the Commissioner does not follow this procedural requirement at the administrative level, the Court cannot simply fill in the required analysis based on the evidence of record.  Rather, "[b]ecause of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion

-13-

of the ALJ may be justified based upon the record." Id. at 243, citing Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

Here, the Commissioner did not completely discount Dr. Davis' very pessimistic views about plaintiff's physical capabilities. Although both Dr. Purdy and Dr. Garling believed that she did not suffer from a severe physical impairment, the Commissioner found not only that her impairment was severe, but that it precluded her from working above the sedentary level. Thus, the Commissioner gave significant weight to Dr. Davis' findings.

However, the opposing opinions of Drs. Purdy and Garling provided some support for discounting his opinion. Although Dr. Purdy did not have the benefit of later records, Dr. Garling reviewed those and provided a credible explanation for why they did not support the level of disability which Dr. Davis ascribed to the plaintiff. He noted that the objective findings were typical in persons of plaintiff's age who experienced few or no symptoms, and that they were poorly correlated with the type of pain which would disable someone even from sedentary work. Additionally, and as adequately articulated in the Commissioner's decision, Dr. Davis' findings were not consistent with either plaintiff's activities of daily living, which included activities such as walking, caring for animals, shopping, and doing various household chores, nor with her own testimony about her ability to walk, sit and lift. The Commissioner reached a reasonable compromise between this conflicting evidence by limiting plaintiff to the performance of sedentary work, and did not err by declining to find that she was completely disabled from a physical standpoint, as Dr. Davis apparently concluded.

VII. Conclusion

For the forgoing reasons, it is recommended that the

plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

## VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).


/s/ Terence P. Kemp
United States Magistrate Judge